IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-114-FL

| | |
|---|---|
| NOA, LLC and INSAF NEHME, | ) |
| Plaintiffs, | ) |
| v. | ) ORDER |
| WALID EL KHOURY; EDWARD EL KHOURY; and HOPE COMERCIO E INDUSTRIA LIMITADA, | ) |
| Defendants. | ) |

This matter comes before the court on defendant Walid El Khoury's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(5) for lack of personal jurisdiction, improper venue, and insufficient service of process. The issues raised have been briefed fully, and in this posture are ripe for ruling.[1] For the reasons that follow, defendant's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff NOA, LLC ("NOA"), a North Carolina limited liability company located in Wake County, North Carolina, and plaintiff Insaf Nehme ("Nehme"), a resident of North Carolina and NOA's lone member, commenced this action by complaint filed February 28, 2014, against defendant Walid El Khoury, plaintiff Nehme's first cousin and a resident of both the Republic of Angola ("Angola") and the Republic of Lebanon ("Lebanon"), alleging (1) breach of partnership

---

[1]Also pending before the court are motions to dismiss by defendants Edward El Khoury and Hope Comercio e Industria Limitada. These motions will be addressed by separate order.

agreement; (2) breach of fiduciary duty; (3) constructive fraud; (4) conversion; and (5) breach of contract. In addition, plaintiffs seek an accounting in order to obtain financial information regarding defendant Hope Comercio E Industria Limitada ("Hope Comercio"), a joint business venture between the parties, located in Angola and managed by defendant Walid El Khoury and his son, defendant Edward El Khoury.[2]

On May 7, 2014, process, including both the complaint and summons, were served on defendant personally in the Republic of Liberia. Plaintiffs filed a return evidencing service, on May 9, 2014. On May 30, 2014, upon the expiration of 21 days with no answer, plaintiffs filed a motion for entry of default. Subsequently, on June 13, 2014, defendant filed a motion for extension of time to plead or otherwise respond to the complaint. In the brief supporting his motion, defendant argued he had been served improperly, because plaintiffs' agent failed to leave with him a copy of the summons. After extensive briefing on the issue, defendant's motion was allowed, over plaintiffs' objection, on July 29, 2014. (DE 32)

Prior to the court's order allowing defendant's motion for extension of time, on July 7, 2014, defendant filed the instant motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(5). Therein, defendant argues he does not have the requisite minimum contacts with the state of North Carolina such that suit may be maintained against him there. Moreover, he argues venue is improper in this district, because an insignificant portion of the acts or omissions giving rise to plaintiffs' complaint occurred in North Carolina, where all Hope Comercio's business

---

[2] Because the instant motion concerns only defendant Walid El Khoury, the court will refer to defendant Walid El Khoury hereinafter as "defendant" throughout this order.

activities occurred in Angola. Defendant finally argues service of process was defective, because plaintiffs' agent failed to leave a copy of the summons in his possession.[3]

**STATEMENT OF FACTS**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction," where no evidentiary hearing is held. Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003). " In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." Id.

Plaintiff NOA is a limited liability company existing under the laws of North Carolina. (See Nehme Decl., DE 33-1, ¶2). Plaintiff Nehme, a resident of North Carolina, is the only member. (See id.). NOA holds several shipping contracts obligating American corporations to ship used clothing to River Way Stores, a Liberian company also owned by plaintiff Nehme. See generally NOA, LLC v. Atlantic Clothing, LLC, No. 5:14-CV-100-FL, 2014 WL 3667230, at *1 (E.D.N.C. July 22, 2014);[4] see also (Compl. ¶15).

Defendant is a foreign national born in Lebanon and currently residing in both Lebanon and Angola. (Second El Khoury Decl., DE 28, ¶¶2,5). Up to and including 2008, defendant was the owner and operator of a business that manufactured and sold powder marble statues. (Id. ¶¶6,10).

---

[3]There initially appeared to be some confusion as to the identity of the document plaintiffs' agent failed to leave with defendant. In his opening brief in support of his motion for extension of time, defendant argued he had not be left with a copy of the complaint. (DE 16, at 2 ¶¶4-5). However, in his reply to plaintiffs' response in opposition to that motion, defendant argued he was not left with a copy of the summons. (DE 19, at 3-4). In addition, in an affidavit filed contemporaneously with his reply brief, defendant avers he never received the summons. (DE 20,¶¶10-11). In briefing on the current motion, defendant again contends plaintiffs' agent failed to leave with him a copy of the summons, rather than the complaint.

[4]Citations to and facts drawn from related case NOA, LLC v. Atlantic Clothing, LLC, are not material to the court's discussion, but are included for explanatory purposes only.

Around May 2007, defendant traveled to North Carolina to attend the High Point Furniture Market, in High Point, North Carolina, with the intent of selling his statues there. (Nehme Decl. ¶7). While visiting North Carolina, defendant was hosted and accompanied by his cousin, plaintiff Nehme. (Id. ¶¶7, 11).

During defendant's May 2007, trip, defendant asked plaintiff Nehme whether plaintiff Nehme would consider going into business with him. (Id. ¶11).[5] Specifically, defendant inquired as to whether plaintiff Nehme would consider establishing a clothing business, similar to River Way Stores, in Angola.[6] (Id.). Thereafter, defendant returned to Lebanon, but discussions regarding the proposed Angolan business were ongoing between defendant and plaintiff Nehme. (Id. ¶¶11-12).

In September or October 2007, defendant again returned to North Carolina, where he and plaintiff Nehme continued to negotiate and refine the details of their proposed business arrangement. (Id. ¶13; see also Second El Khoury Decl. ¶11). The parties' negotiations were fruitful, and they agreed on the formation and operation of their new company, Hope Comercio. (Nehme Decl. ¶13). Plaintiff Nehme and defendant agreed to be equal partners in Hope Comercio, with plaintiff providing administrative and operational support, and defendant managing the business day-to-day. (Id.). After defendant returned to Lebanon, he and plaintiff Nehme continued to discuss the

---

[5] Plaintiffs submit three possible time periods during which defendant could have proposed the agreement, April May, and November 2007. For purposes of defendants' motion to dismiss, resolution of the exact date on which defendant initiated business dealings is not required. In addition, defendant contends he had never visited North Carolina prior to October 2007. (Second El Khoury Decl. , DE 35, ¶¶ 3-4). In support of defendant's contentions, he submits an affidavit with approximately 15 pages purportedly from his Lebanese passport annexed thereto. In many of the purported passport images, the specifics of the stamp are difficult to ascertain. Moreover, the pages, while chronological, are not a complete representation of defendant's passport. This evidence is insufficient to establish conclusively that defendant was not in North Carolina during, or near, the dates claimed by plaintiff.

[6] Defendant argues plaintiff Nehme approached him about the possibility of opening a used clothing store in Angola while on a business trip to Angola in February 2008. (Third El Khoury Decl. ¶13).

4

development of Hope Comercio through phone calls and emails, some of which were initiated by defendant to plaintiff in North Carolina. (Id. ¶14).

In early 2008, defendant returned to North Carolina three times. First, in February 2008, defendant traveled to North Carolina, met with plaintiff Nehme to discuss the development of Hope Comercio, and the two men subsequently departed North Carolina for Angola.[7] (Id. ¶15). Twice more, in the spring of 2008, defendant returned to North Carolina on other business, but engaged plaintiff in significant discussions regarding the development of Hope Comercio.[8] (See id.). One of these trips lasted approximately two months, during which time defendant resided with plaintiff Nehme in Raleigh, North Carolina. (Id.).

By fall 2008, Hope Comercio was operational. Pursuant to the parties agreement, NOA paid for its suppliers to ship used clothing to Hope Comercio in Angola, (id. ¶¶21-22), defendant retrieved the merchandise from port, (id. ¶19), and subsequently defendant wired money to NOA's bank account, at a bank located in North Carolina. (Id. ¶22). Over the course of five years, NOA arranged more than $8,000,000 in shipments to Hope Comercio, and received millions of dollars from defendant, deposited into its North Carolina bank account, in return. (Id.).

Between 2008 and 2013, plaintiff Nehme and defendant communicated multiple times a day regarding various aspects of Hope Comercio's business. (Id. ¶20). Often, these communications were initiated by defendant to plaintiff in North Carolina. (Id.). On at least one occasion, defendant was unable to pay the import fees owed on a shipment (Id. ¶19). To resolve this financial difficulty,

---

[7]Defendant contends he never came to North Carolina in February 2008, but rather that plaintiff visited him in Angola. (Second El Khoury Decl. ¶13).

[8]Defendant contends these trips were related to his statue business, and wholly unrelated to Hope Comercio. (Id. ¶15)

5

defendant called plaintiff Nehme and requested he leverage a long-standing business relationship with Maersk Line ("Maersk"), a company with which NOA was affiliated through contracts related to River Way Stores, to have Maersk waive the fees. (Id.). In addition to constant communication between the parties, defendant visited North Carolina in both 2010 and 2011, once by plaintiff's invitation, to address concerns regarding the operation of Hope Comercio. (Id. ¶¶ 23; Second El Khoury Decl. ¶¶18-19).

In 2013, defendant withheld from plaintiff NOA payment for a shipment of used clothing valued at approximately $1,200,000. (Compl. ¶27). Subsequently, plaintiff Nehme discovered defendant had been paying himself and his son unreasonably high salaries, inflating certain company expenses, and negotiating directly with Hope Comercio's suppliers, in violation of the parties' agreement. (Id. ¶¶27-29). The instant suit followed.

**COURT'S DISCUSSION**

A.  Motions to Dismiss for Lack of Personal Jurisdiction

    1.  Standard of Review

"When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). Where defendant disputes jurisdiction through affidavits or otherwise, plaintiff may not rest on mere conclusory allegations. See McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983). Rather, plaintiff must come forward with affidavits or other evidence to counter defendants' arguments. See id. (affirming dismissal under Rule 12(b)(2) where, "[a]gainst the defendants' affidavits," a plaintiff "offered nothing beyond his bare allegations that the defendants

6

had . . . significant contacts" with the forum state). When the court addresses the contested jurisdictional question on the basis of such materials, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ( "[The court] must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.").

    2.    Analysis

This court may not assert personal jurisdiction over a non-resident defendant, unless (1) the exercise of jurisdiction is authorized by North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction comports with Fourteenth Amendment due process requirements. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Id. Thus the statutory inquiry merges into the constitutional inquiry. Id. This constitutional inquiry asks whether the "defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 (1945)).

> [A] court may assert jurisdiction over a nonresident defendant through either of two independent avenues. First, a court may find specific jurisdiction based on conduct connected to the suit. If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. Second, a court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of continuous and systematic activities in the forum state.

7

Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012) (citations omitted).

Plaintiffs assert only that this court has specific jurisdiction over defendant. The court finds, unsurprisingly, that plaintiffs have not shown that defendant has conducted "continuous and systematic activities" in North Carolina. Id. This court therefore has no general jurisdiction over defendant.

To determine if it has specific jurisdiction, a court is to consider: (1) the extent to which a defendant purposefully availed itself of the privilege of conducting activity in the forum state, or otherwise invoked the benefits and protections of the state's laws; (2) whether the plaintiffs' claims arose out those activities directed at the forum state; and (3) whether exercising personal jurisdiction is constitutionally reasonable. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 294 (4th Cir. 2009).

    a.    Purposeful Availment

The first prong of the specific jurisdiction test is "not susceptible of mechanical application" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Nevertheless, the Fourth Circuit has noted a number of nonexclusive factors courts have considered in the business context, namely:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,

8

- the nature, quality and extent of the parties' communications about the business being transacted, and
- whether the performance of contractual duties was to occur within the forum.

Id. (citations omitted).

Scrutiny of these factors and review of the facts of this case show plaintiffs have satisfied the first prong of the test. First, plaintiffs have put forth evidence that defendant reached into North Carolina to solicit or initiate business. Plaintiff Nehme avers that sometime in 2007, defendant, while in North Carolina, approached plaintiff Nehme and his brother, Sam Nehme, to discuss with them the possibility of establishing a business venture in Angola. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (attaching great significance to the fact of who initiated contact between the parties); see also Johansson Corp. v. Bowness Constr. Co., 304 F. Supp. 2d 701, 705 (D.Md. 2004) ("One of the most important factors is whether the defendant initiated the business relationship in some way." (internal citations and quotations omitted)); CBP Res., Inc. v. Ingredient Res. Corp., 954 F. Supp. 1106, 1109 (M.D.N.C. 1996) (a defendant's reaching out and creating continuing relationships and obligations weighs heavily in favor of finding personal jurisdiction).

Additionally, the parties shared a long-term relationship, involving a significant amount of business. In particular, over the course of seven years, defendant and plaintiffs engaged in numerous transactions, involving more than $8,000,000 worth of goods. This factor weighs heavily in favor of finding jurisdiction. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (holding that personal jurisdiction in a suit over life insurance did not offend due process where the life insurance contract had remained in force over many years and payments were sent from the forum state); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986) (noting the difference for due

9

process analysis between a single transaction and a "substantial and continuing relationship"); Tate Access Floors, Inc. v. Commercial Structures & Interiors, Inc., Civ. A. No. HAR 93-2807, 1994 WL 149600, at * 4 (D.Md. Apr. 6, 1994) (holding personal jurisdiction was appropriate based in part upon the fact that "the two companies established a long-term, continuing relationship lasting approximately ten years, during which time the parties engaged in multiple transactions involving hundreds of thousands of dollars"). In addition, over the life of the partnership defendant has wired millions of dollars to plaintiff NOA's bank account, held with a bank in North Carolina.

Furthermore, defendant made repeated contact with plaintiff Nehme, in North Carolina, regarding their business relationship. Plaintiff Nehme avers that several critical terms of the parties' partnership agreement were agreed to in North Carolina, including the terms relating to the division of management responsibilities within Hope Comercio, and the parties' respective share of the profits. See Chung, 783 F.2d at 1128 (noting importance of where and how essential contractual terms were negotiated). Moreover, on several occasions in 2008, 2010, and 2011, defendant visited North Carolina. In 2010, defendant accepted plaintiff Nehme's invitation to come to North Carolina, rendezvous with plaintiff Nehme, and then set out to meet various clothing suppliers. See CFA Inst., 551 F.3d at 295 (acknowledging defendant's appearance at plaintiff's board meeting by invitation was a significant contact). These business trips, all involving flights into North Carolina to meet plaintiff Nehme, continued up to an including October 2011.

Finally, the nature, quality, and extent of the parties' communications favors a finding of purposeful availment. Over the course of several years, defendant initiated frequent conversations with plaintiff regarding Hope Comercio, through email, telephone, and video-communication technology. At one point, plaintiff Nehme and defendant were speaking about their business venture

10

multiple times per day. See Chung, 783 F.3d at 1128 (noting that where "frequent communications passed" between the parties, this fact favors the exercise of personal jurisdiction); see also Consulting Eng'rs, 561 F.3d at 279 n.5 (4th Cir. 2009) ("The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state."). In one such communication, defendant reached into North Carolina to request plaintiff Nehme's assistance in obtaining merchandise being held in port, because he could not cover the import fees. Defendant requested plaintiffs leverage their preexisting business relationship with the shipper to pressure it to waive the fees.

Defendant vehemently contends his contacts are insufficient to support jurisdiction, citing WLC, LLC v. Watkins, 454 F. Supp. 2d 426 (M.D.N.C. 2006). In that case, the district court held that defendant, a Mississippi resident, had insufficient contacts with North Carolina to be subject to suit in the state. Id. 436-39. In that case, defendant briefly traveled to North Carolina, at the insistence of a third party, for the purpose of engaging plaintiff in preliminary negotiations regarding the formation of a partnership. Id. at 436. However, the court ultimately concluded it lacked personal jurisdiction where no contractual terms were finalized while defendant was in the state; defendant did not engage in any other business in the state; defendant had not initiated the meeting between the parties; and all defendant's contractual obligations were to be performed outside North Carolina. Id. at 436-39.

However, defendant's analogy is unpersuasive. The Fourth Circuit previously has held minimum contacts were satisfied in circumstances more similar to the case at bar. Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499 (4th Cir. 1985). In Hirschkop & Grad, plaintiff, a Virginia law firm, sued out-of-state defendants, residents of Oregon, in Virginia for defendants' alleged

11

breach of a fees contract. Id. at 1502. Defendants objected to personal jurisdiction, arguing they lacked the requisite minimum contacts with the forum state. Id. In analyzing the sufficiency of defendants' contacts, the Fourth Circuit concluded the "minimum contacts" test was satisfied where defendants met with plaintiff in the forum state to discuss the possibility of representation; defendants subsequently retained plaintiff to represent them; defendants had been to the forum state to discuss specific issues regarding legal fees; the parties had corresponded with each other both telephonically and in written form over the course of two years; and defendants mailed checks to plaintiff in Virginia, which were deposited in a Virginia bank. Id. at 1503.

Here, defendant initiated contact with plaintiffs regarding the business venture in issue while in North Carolina. Subsequently, defendant negotiated the material terms of the parties' oral partnership agreement, including the profit-splitting provision, and entered into a partnership, in North Carolina. Defendant since has returned to North Carolina, flying into the state at plaintiff Nehme's invitation to visit clothing suppliers. Over the course of their relationship, the parties have engaged in extensive communications, with many being initiated by defendant to plaintiff in North Carolina. Finally, defendant has wired millions of dollars to plaintiff NOA, directed toward plaintiff NOA's bank account held with a North Carolina bank. On these facts, defendant has sufficient minimum contacts to be subject to suit in North Carolina.

    b.  Relatedness of Contacts

The second prong of the minimum contacts test requires the court to determine whether the cause of action "arose out of" defendant's contacts with the forum state. This prong is satisfied when defendant's contacts are the "genesis of [the] dispute" between the parties. CFA Inst., 551 F.3d at 295. The court's analysis, therefore, must identify a "seamless series of business

12

transactions" linking the parties' first interaction in North Carolina to the filing of the complaint. Id. This prong is met easily on the facts of this case.

In 2007, defendant approached plaintiff Nehme in North Carolina to discuss the potential formation of a partnership. That conversation led to numerous discussions between the parties, eventually culminating in the formation of a partnership to operate Hope Comercio, entered into in North Carolina. Because of this partnership, defendant returned to North Carolina several times over following five years. And it is this partnership agreement that plaintiffs contend defendant violated, leading to the filing of the complaint. Accordingly, the relatedness prong is satisfied on these facts.

   c.   Constitutional Reasonableness

Finally, the court must determine whether its exercise of jurisdiction is "constitutionally reasonable." Id. at 296 (quoting Nolan, 259 F.3d at 216). This prong is intended to ensure that litigation is not "so gravely difficult and inconvenient as to place . . . the defendant at a severe disadvantage in comparison to his opponent." Id. (citations and internal quotations omitted). If the first prong of the minimum contacts test is satisfied, it is "presumptively not unreasonable to require [defendant] to submit to the burdens of litigation in" North Carolina. Consulting Eng'rs, 561 F.3d at 278. The court concludes this prong also is satisfied on these facts.

Factors relevant to the court's reasonableness determination include: (1) the burden on defendant of litigating in the forum; (2) the interest of the state in adjudicating the dispute; (3) plaintiffs' interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interest of the states in furthering social policy. Consulting Eng'rs, 561 F.3d at 279.

13

Of particular relevance here are factors one and two. Although defendant will face unique challenges litigating in North Carolina, such difficulty does not rise to such a level as to make defendant's submission to litigation in North Carolina constitutionally unreasonable. As shown by these proceedings, defendant was "able to secure counsel to represent [his] interests." CFA Inst., 551 F.3d at 296. Thus, defendant's litigation burden is "no more substantial than that encountered by other [individuals] that choose to transact business in" North Carolina. Id. Further, the court is unmoved by defendant's contention that he is a "stranger to North Carolina." (Def.'s Br., DE 27, at 16). Defendant should have reasonably foreseen a lawsuit potentially occurring in this forum, as defendant entered into a business relationship with a North Carolina resident and North Carolina limited liability company while physically present in the state of North Carolina. See Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring) (explaining defendant's contacts with a foreign sovereign "give[] rise to predictable risks"); CFA Inst., 551 F.3d at 296 (same).

In addition, North Carolina has an interest in the outcome of this litigation. North Carolina has an interest in "the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of [state] law." Id. at 297; see also Lee v. Walworth Valve Co., 482 F2d 297, 299-300 (4th Cir. 1973) ("The interest of [the forum state] is substantial . . . for it has a paternal interest in the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action."). Here, plaintiffs' claims are based entirely in North Carolina law. Although defendant argues the state's interest should be minimal, where the allegedly harmful acts occurred in Angola, this argument is not persuasive. As noted, where the pleaded causes of action are based in North Carolina law, and require the application thereof, the state has a sufficient interest in the outcome of this litigation to make litigation here constitutionally reasonable.

14

In sum, the court concludes that defendant is susceptible to personal jurisdiction in North Carolina, and his motion to dismiss under Rule 12(b)(2) is denied. Through the establishment of the Hope Comercio partnership, defendant personally availed himself to the privileges of doing business in this state. Moreover, that business relationship is the "genesis" of the instant dispute. Finally, although defendant will encounter certain difficulties when litigating in this forum, he has not shown that this court's exercise of jurisdiction would be constitutionally unreasonable.

B.  Motion to Dismiss for Improper Service

Defendant also argues the court should dismiss plaintiffs' complaint, because he was not served properly. Specifically, defendant argues that, although he was provided with the complaint and summons initially, he was not allowed to retain the summons after plaintiffs' agent effectuated service.

A motion to dismiss pursuant to Rule 12(b)(5) challenges the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id. The plaintiff bears the burden of establishing that process has been properly served. See McRae v. Rogosin Converters, Inc., 301 F. Supp. 2d 471, 474 (M.D.N.C. 2004); see also Commercial Metals Co. v. Compania Espanola de Laminacion S.L., 749 F. Supp. 2d 438, 442-43 (E.D. Va. 2010) (placing burden of establishing proper service on plaintiff).

15

Service in a foreign country must be effectuated pursuant to Federal Rule of Civil Procedure 4(f). In the absence of an internationally agreed means of service, Rule 4(f) allows personal service, to the extent that method does not conflict with the jurisdiction's applicable law. Fed. R. Civ. P. 4(f)(2)(C)(i). In pertinent part, the rule provides that service may be effectuated by "delivering a copy of the summons and complaint to the individual personally." Id.

Defendant previously raised this argument in addressing an earlier motion for extension of time to plead or otherwise respond. (See DE 19, at 3-4). Although the court granted defendant's motion, the court also noted that plaintiffs had made a strong showing of proper service. (DE 32, at 6). There is no reason to revisit that conclusion. Defendant's overtly-technical motion to dismiss is denied. Even assuming plaintiff failed to leave with defendant a copy of the summons, defendant has suffered no prejudice accruing therefrom. Moreover, if the court were to grant defendant's motion, plaintiff simply would effectuate service on defendant again. Defendant should not be allowed to delay the suit on such technical grounds.

C.    Motion to Dismiss for Improper Venue

Defendant finally argues this court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3), as venue may not be laid in this district. Defendant also implies that venue may not be laid properly anywhere in the United States.

Venue is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) in which a "substantial parts of the events or omissions giving rise to the claim occurred;" or (3) "if there is no other district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b). Plaintiffs contend that a substantial portion of

the events or omissions giving rise to the claim occurred in the Eastern District of North Carolina. (See Compl. ¶¶1-10). Defendant disputes plaintiffs' conclusion. In any event, even if venue may not be laid pursuant to § 1391(b)(2), as highlighted by the preceding discussion, defendant is subject to personal jurisdiction in this district. 28 U.S.C. § 1391(b)(3). Accordingly, defendant's motion to dismiss for improper venue is denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process is DENIED. (DE 26).

SO ORDERED, this the 31st day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

17