IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-114-FL

| | | |
|---|---|---|
| INSAF NEHME, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| WALID EL KHOURY, EDWARD EL KHOURY, and HOPE COMERCIO E INDUSTRIA LIMITADA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss plaintiff's claims and for default judgment as to liability on defendants's counterclaims. (DE 223). With plaintiff's response in opposition, (DE 228), and plaintiff's reply thereto, (DE 231), having been received, the issues raised are ripe for ruling.

**BACKGROUND**

Where the full case background often has been stated by the court in this long running dispute, the court proceeds here to describe events pertinent to the instant motion of or relating to plaintiff's conduct in this litigation and the closely related bankruptcy proceeding.[1]

A.  Discovery Issues

The court entered its case management order September 9, 2015, setting August 31, 2016

---

[1] Former plaintiff NOA, LLC ("NOA"), which, at all relevant times was owned and controlled by plaintiff, is debtor in In re NOA, LLC, No. 17-02097-5-JNC (Bankr. E.D.N.C.), which action now is proceeding in the bankruptcy court for this district before Hon. Joseph N. Callaway.

(later extended to October 28, 2016), as the deadline for completion of all discovery. During the discovery period, it was called upon on three occasions to intervene in discovery due to plaintiff's failure to meet discovery obligations.[2] As the case proceeded to the summary judgment stage, it became apparent plaintiff's stated inability at the October deposition to acknowledge authenticity of certain e-mails as authored by plaintiff was undermined by his performance at the December deposition. Following close of the discovery period, plaintiff did not cease improper conduct.[3]

However, on the basis of observation that defendants used a system for affixing the "confidential" label that was to some degree irregular, the court found that plaintiffs' improper disclosure fell shy of "that narrow category of the most flagrant cases, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court." (DE 205 at 9 (quoting Mut. Fed. Sav. and Loan Ass'n. v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989)). Accordingly, the court again denied defendants' request for punitive dismissal.

B.  Tax Issues

In connection with summary judgment, defendants also presented information not disputed that plaintiff failed to disclose his claimed ownership of Hope Comercio, a foreign business entity,

---

[2] The court sanctioned plaintiff or his former attorneys, first, March 14, 2016, for failure to make timely response to interrogatories, and, second, August 23, 2016, for failure to make adequate response to same. The court noted that while ensuring adequate discovery responses usually is the responsibility of counsel, "plaintiffs certainly may have been stonewalling defendants' defense." (Aug. 23, 2016 Order at DE 144, pp. 7-8). Third, where plaintiff appeared at his October 2016 deposition unprepared to answer basic questions and refused to authenticate his own e-mail transmittals, at hearing held November 15, 2016, the court found cause to reopen plaintiff's deposition for four hours of supplemental questioning held December 2, 2016 ("December deposition").

[3] On November 10, 2015, the court approved the parties' proposed stipulation and discovery confidentiality order, which prohibits any party receiving information in discovery from using information marked "confidential" for any purpose other than the instant litigation. (DE 106 ¶ 4). In violation of this order, plaintiff disclosed confidential documents as part of a complaint filed in a Lebanese court October 12, 2016, alleging largely the same claims at issue here. The court awarded sanctions consisting of defendants' costs and attorneys' fees associated with producing the improperly disclosed documents and in bringing the motion for sanctions. The court taxed these sanctions against plaintiff, NOA, and their former attorneys' equally and lodged an additional monetary penalty of $5,000 against the attorneys.

and its bank accounts in his tax returns, as required under the Foreign Account Tax Compliance Act, 26 U.S.C. § 6038D, and the Bank Secrecy Act. 12 U.S.C. § 1941, et seq. Based upon failures of disclosure to the bankruptcy court, discussed below, and the Internal Revenue Service ("IRS"), the court held that plaintiff was estopped from claiming ownership interest in Hope Comercio or any property premised upon an ownership interest in Hope Comercio in proceedings before this court

C.     Bankruptcy Proceeding

On April 28, 2017, former plaintiff NOA filed voluntary petition for Chapter 11 bankruptcy in bankruptcy court for this district. However, NOA, which, at that time was controlled by plaintiff, failed to disclose the existence of this lawsuit in bankruptcy schedules, as required.

Defendants have alerted the court to additional circumstances in bankruptcy proceeding, unrefuted by plaintiff, which also are pertinent here. On September 14, 2017, the bankruptcy court appointed John C. Bircher, III ("Bircher"), to act as Chapter 11 trustee for NOA. In memorandum opinion issued September 29, 2017, the bankruptcy court explained that it appointed Bircher because NOA, under plaintiff's control, knowingly and willfully violated a restriction ordered by the bankruptcy court providing that NOA must not allow goods to leave a United States port without receiving payment for said goods from a buyer first ("cash collateral order"). The bankruptcy court opined that it "will not condone such a knowing and willful failure to abide by its orders." In re NOA, LLC, No. 17-02097-5-JNC (Bankr. E.D.N.C. Sep. 29, 2017).

D.     Representation Issues

Bircher filed on this court's docket a notice of appearance on behalf of NOA on September 25, 2017.[4] On the same day, former counsel for plaintiff and NOA, moved to withdraw, which

---

[4] On November 7, 2017, NOA and defendants entered a stipulation of dismissal, which dismissed all claims by and against NOA. Accordingly, NOA no longer is a party to the case.

motion this court granted September 27, 2017. That order directs, "[f]or individual parties: within 21 days of the filing date of this order, [plaintiff] must file a notice of self-representation or cause new counsel to file a notice of appearance." (DE 218 at 1). Moreover, in bold print, the order warns

> **A party that fails to file a notice of self-representation or cause new counsel to file a notice of appearance may be subject to sanctions, including but not limited to dismissal or default judgment. A self-represented party is responsible for being familiar and complying with all applicable rules and pending deadlines in this action.**

(Id. at 2 (emphasis in original)); see Local Civil Rule 5.2(e).

Including additional time afforded to non-electronic filers, deadline for plaintiff to file notice of self-representation or cause new counsel to file notice of appearance elapsed October 23, 2017, and plaintiff neither filed notice of self-representation, nor caused an attorney to notice an appearance. Also October 23, 2017, defendants filed the instant motion seeking dismissal of plaintiff's claims and default judgment on defendants' counterclaims.

On November 16, 2017, 24 days after the deadline to do so, W. Sidney Aldridge filed a notice of appearance on behalf of plaintiff and filed plaintiff's response in opposition to the instant motions.[5]

## DISCUSSION

A.   Motion to Dismiss

Defendants move for dismissal of plaintiff's remaining claims based upon plaintiff's failure to file notice of self-representation or cause counsel to file notice of appearance within the court

---

[5] Due to an inadvertent error, the clerk's office failed to send correspondence notifying plaintiff of deadlines associated with defendants' motion to dismiss in accordance with this court's practice. In recognition of this error, despite that plaintiff already had responded in opposition to defendants' motions, the court, on its own motion, allowed plaintiff leave to supplement his response. The foregoing extension did not, however, affect plaintiff's earlier noticed obligation to file notice of self-representation or cause counsel to file notice of appearance on or before October 23, 2017.

4

ordered deadline. The court construes defendant's request as a motion to dismiss for failure to prosecute arising under Federal Rule of Civil Procedure 41(b).

Rule 41(b) provides "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Absent some exceptions not applicable here, dismissals under the rule are "with prejudice," unless "the dismissal order states otherwise" Id. Rule 41(b) dismissal is a powerful docket management tool, but one to be used sparingly, only after weighing the consequences of dismissal against "the sound public policy of deciding cases on their merits." Reizakis v. Loy, 490 F.2d 1132, 1135 (4th Cir. 1974). The ultimate decision lies within the court's discretion. See id.

The Fourth Circuit has set out four factors to guide the district court's discretion. The court must consider 1) "the degree of personal responsibility of the part of the plaintiff"; 2) "the amount of prejudice to the defendant caused by the delay"; 3) "the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion"; and 4) "the effectiveness of sanctions less drastic than dismissal." Bauer v. C.I.R., 97 F.3d 45, 49 (4th Cir. 1996).

Failure to file a notice of self-representation is attributable solely to plaintiff. See id. Second, the amount of prejudice to defendants, which consists of delay in resolving issues that remain following partial summary judgment and costs incurred in presenting the instant motions, is substantial and needless, albeit not extraordinary in the context of this costly and protracted case. See id.; see also Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 418 (4th Cir. 2010) (noting that "delay in and of itself does not constitute prejudice to the opposing party . . . the issue is one of prejudice to the adversary, not merely the existence of delay.") (emphasis in original).

5

Third, inconclusive hints of plaintiff's dilatory conduct have arisen earlier in this case where previously this court declined to issue monetary sanctions for plaintiff's failure to make timely and adequate response to interrogatory requests on grounds that it was unclear to the court whether plaintiff was "stonewalling" or whether plaintiff's counsel failed to conduct discovery with proper client communication." (Aug. 23, 2016 Order at DE 144, pp. 7–8). However, plaintiff's answers at the December deposition reveal that no justification existed for plaintiff's non-responsive answers at the October deposition. (See 159-1 at 19). Accordingly, where the court was unable to find a history of dilatory conduct in ruling upon defendants' previous motion to dismiss for failure to prosecute, the scales now tip in favor of finding a history of dilatory conduct. Therefore, the third Bauer factor weighs in favor of dismissal. Bauer, 97 F.3d at 49.

Fourth, the court has issued progressively more severe sanctions due to plaintiff's delays and failure to obey court orders. For his failure to make timely response to interrogatories, the court ordered that plaintiff respond without objection. March 14, 2016, Text Order. For his failure to make adequate response to interrogatories, the court warned that plaintiff might share partial blame but ultimately afforded plaintiff benefit of the doubt and sanctioned only his attorneys. (DE 144 at 7–8). For his inadequate deposition answers, the court ordered plaintiff to submit to additional questioning. (DE 151). For his improper disclosure of information subject to this court's protective order, the court awarded opposing counsel's attorneys' fees taxed, in part, against plaintiff individually. (DE 205 at 5–9; DE 229 at 5). For his failures to disclose required information to the bankruptcy court and the IRS, the court held that plaintiff's is estopped from pursuing the lion's share of his claims. (DE 205 at 11–16). There are no further intermediate sanctions available to deter plaintiff's violations of court orders and evident disregard for the rules. At this juncture, the

6

drastic remedy of full dismissal of plaintiff's remaining claims is appropriate. Bauer, 97 F.3d at 49.

Plaintiff argues that his failure timely to file a notice of self-representation or cause counsel to file a notice of appearance is due to misunderstanding where plaintiff believed that Bircher would represent plaintiff's individual claims in addition to representing NOA. Plaintiff concedes that this misunderstanding was rectified on October 10, 2017, when Bircher explained that he did not represent plaintiff. Bircher's explanation left plaintiff 13 days to comply with the court's September 27, 2017, order. Plaintiff makes no suggestion that 13 days is insufficient time to file notice of self-representation. Accordingly, plaintiff's earlier misunderstanding, reasonable though it might have been initially, does not constitute any excuse to disregard this court's order.

Additionally, plaintiff argues that he encountered difficulty finding new counsel. However, this argument is inapposite where plaintiff had the option to file notice of self-representation. Moreover, Rule 6 of the Federal Rules of Civil Procedure contemplates that, had plaintiff moved for extension of time prior to expiration of the deadline, upon good cause shown, the court would have extended deadline for plaintiff to hire new counsel. Rule 6 does not contemplate that a party may, with benefit of specific notice from the court of the existence of a deadline, ignore said deadline and seek freedom from consequences by untimely filed request for extension of time after the fact. See Fed. R. Civ. P. 6(b)(a)(B) (allowing extension of time after a deadline has elapsed only upon a showing of "excusable neglect."); Davis v. Mitchel, 553 F. Appx. 356, 357 (4th Cir. 2014) (pro se plaintiff's failure timely to file objections to memorandum and recommendation of a magistrate judge not excusable neglect); Ballard v. Carlson, 822 F.2d 93 (4th Cir. 1989) ("Pro se litigants are entitled to some deference from courts. But they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be

impossible.") (citations omitted).

Finally, plaintiff cites United States v. Shaffer Equipment Company for the proposition that, to exercise its inherent power to dismiss a case, the court must find existence of bad faith by clear and convincing evidence and apply a six factor test. As held, however, Bauer describes the factors this court should consider in deciding whether to dismiss a case under Rule 41. 97 F.3d at 49. Accordingly, plaintiff's arguments under Shaffer fail.

B.      Entry of Default

Defendants move for default judgment on their counterclaims against plaintiff. To obtain default judgment, a party must first seek entry of default under Federal Rule of Civil Procedure 55(a). New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005); Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1988).

Under Rule 55(a), entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . ." Courts have interpreted the phrase "otherwise defend" broadly, permitting entry of default for lack of pretrial diligence, failure to appear at an adjourned trial resumption, dismissing counsel without an appointed replacement, and abandonment of an active defense. See Cty. of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129–30 (2d Cir. 2011) (collecting cases). Moreover, if a party fails to plead or otherwise defend, entry of default is mandatory, not discretionary. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default.") (emphasis added); see Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015); Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014). Indeed,

8

"a defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted." Perez, 744 F.3d at 1337 (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2692 (3d ed. 2004)).

Plaintiff opposes entry of default. The court may set aside default upon a showing of good cause. Fed. R. Civ. P. 55(c). When deciding whether to set aside default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the adversary party, whether there is a history of dilatory action, and the availability of sanctions less drastic. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 205 (4th Cir. 2006). As noted by the Fourth Circuit in Colleton, the court has been consistent in its determination that, as a general matter, defaults should be avoided. 616 F.3d at 417.

Four of the six Payne factors echo the Bauer factors that guide the court's discretion in ruling upon a motion to dismiss for failure to prosecute. Compare Payne, 439 F.3d at 205, with Bauer 97 F.3d at 49. Accordingly, the court finds, for the same reasons noted above, that plaintiff solely is responsible for his default, some prejudice to defendants arises from plaintiff's default, there is a history of dilatory action, and sanctions less drastic than dismissal have proven ineffective. Payne, 439 F.3d at 205. Moreover, this is not a case wherein, for some excusable reason, a party suddenly discovered a previously unrecognized default and moved promptly to set it aside. Rather, plaintiff had specific notice from the court as to his deadline to respond to the court's September 29, 2017, order and, with no justification, allowed the default to occur, then waited another 24 days to take action. That performance is not reasonably prompt. See id.

Finally, despite the long history of this case, the record includes little evidence pertinent to

9

defendants' counterclaims or plaintiff's defenses thereto. As disclosed in plaintiff's reply to defendants' counterclaims, plaintiff asserts affirmative defenses resting on the applicable statute of limitations; doctrines of laches, waiver, and estoppel; defendant's failure to mitigate damages; causation by third parties; and the economic loss doctrine. (DE 102 at 6–7). Moreover, evidence submitted in connection with defendants' motion for summary judgment indicates that the partnership agreement that serves as the basis for both sides' claims was never memorialized in writing, and his deposition testimony demonstrates that plaintiff contests the terms of partnership agreement alleged by defendants. (See DE 158-2 at 92:7–25).

All that is necessary to establish the existence of a meritorious defense is a proffer of evidence which, if believed, would permit the court to find for the defaulting party. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir.1988). Where there exists evidence that the partnership agreement that lies at the heart of this case is not memorialized in writing, it may be said that plaintiff's deposition testimony asserting facts inconsistent with defendants' counterclaims, for example, that the terms of the partnership agreement included no requirement of initial investment, constitutes a meritorious defense for purposes of the instant motion. See id. The evidence of record does not illuminate the merits of plaintiff's other affirmative defenses. Nonetheless, on balance, the Payne factors weigh in favor of denying plaintiff's motion to set aside default. That is, despite uncertainty about terms of any partnership agreement or potential viability of other affirmative defenses, those disputes do not change the fact that plaintiff defaulted without cause following other dilatory conduct, actions disclosing disregard for the rules and court orders, and nonresponsiveness to lesser sanctions. Accordingly, plaintiff's opposition to entry of default is unavailing. See Payne, 439 F.3d at 205.

C.   Further Proceedings

A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). "The defendant is not held to admit conclusions of law," and "a default judgment may be lawfully entered only according to what is proper to be decreed upon the statements of the [complaint], assumed to be true, and not as of course according to the prayer of the [complaint]." Id. (quotations omitted). Additionally, Rule 55(b)(2) provides that, if necessary, "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

Defendants' counterclaims allege, and plaintiff's default establishes, that plaintiff and defendant Walid agreed in spring 2008 to form a partnership to sell used clothing in Angola though Hope Comercio. (DE 94 at 13 ¶ 15). Defendant Walid agreed to invest $500,000 immediately upon formation of the partnership, and plaintiff agreed to invest a similar amount in the future. (Id. at 14 ¶ 16). Plaintiff agreed to work with suppliers in the United States to obtain merchandise, and Walid agreed to operate the retail store in Angola. (Id.). Both parties agreed to reinvest the profits earned by the partnership, and if their intended agreement was fulfilled, they would share profits. (Id.).

After the partnership began operations in October 2008, Walid transferred to plaintiff $400,000 to purchase three vehicles and to ship several used clothing containers to Hope Comercio. (Id. ¶ 17). At some point, plaintiff contributed less than $150,000 worth of used clothing to the partnership, by shipping to Angola four containers of items he could not sell at his Liberian store,

11

River Way Stores. Plaintiff never invested the remaining amount. (Id. ¶ 18).

In approximately August 2009, the partnership needed additional funding due to a new policy in Angola that made it necessary to clear numerous containers of clothing from the port in Luanda immediately. (Id. at 15 ¶ 19). At that time, Walid asked plaintiff to provide his investment in the partnership, but plaintiff refused, and Walid ultimately borrowed $200,000 from a friend to rescue Hope Comercio and the partnership. (Id. at ¶¶ 20–21).

During the following years, the business carried on as Walid and Hope Comercio sent money to plaintiff and NOA to use the money to purchase used clothing. (Id. ¶ 22). Eventually, a dispute arose between the parties involving a company that plaintiff and NOA used to source clothing called Carolina International Trading ("CIT"), based in South Carolina. Specifically, plaintiff paid CIT in advance for clothing where his practice with other suppliers was to pay on delivery. (Id. ¶ 23). By October 2011, plaintiff had caused Hope Comercio to advance more than $340,000 to CIT, even as Hope Comercio's suppliers in Texas were complaining that plaintiff failed to pay them. (Id. ¶ 24). In or around October 2011, Walid accompanied plaintiff to visit CIT and, at that time, discovered that CIT's inventory was worth less than $50,000. (Id. at 16 ¶ 25).

Several weeks later, plaintiff informed Walid that "we started the process to take [CIT's owner] to court." (Id. ¶ 26). On or around February 29, 2012, plaintiff informed Walid that CIT had filed bankruptcy, and that this would result in a loss to Home Comercio of roughly $330,000. (Id.). Nonetheless, plaintiff continued to do business with CIT and never filed a lawsuit against CIT. (Id. ¶ 27).

Defendants allege, on information and belief, that plaintiff used Hope Comercio's prepayment to fund CIT's shipment of several containers of used clothing to Liberia, for sale in

plaintiff's separate River Way Stores venture. (Id. ¶ 28). During 2012, plaintiff began operating a used clothing supply and sorting company under the name Sanford Rag Company ("SRC") and began supplying Hope Comercio with used clothing from SRC, as well as from the previously existing suppliers. (Id. ¶¶ 29–30). In 2013, plaintiff began using Hope Comercio's money to prepay SRC for its used clothing while failing to pay Hope Comercio's other suppliers. (Id. at 16–17 ¶ 31). Defendants allege, on information and belief, that plaintiff used payments from Hope Comercio to purchase used clothing for River Way Stores. (Id. at 17 ¶ 31).

In or around November 2013, six containers arrived to the port in Angola without documentation. (Id. ¶ 34). Defendant Walid learned that the suppliers withdrew documentation because plaintiff failed to pay them. (Id.). Over the course of 2013, up to and including June 29, 2015, plaintiff held between $148,000 and $600,000 of Hope Comercio's money, which does not include amounts plaintiff used to fund his separate business interests. (Id. ¶¶ 32, 35).

Based upon the foregoing, the court determines that a damages hearing is necessary where the court may enter judgment only to the extent defendants carry their burden to prove damages by a preponderance of the evidence. See Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249, 252 (4th Cir. 1967) (plaintiff required to prove damages by preponderance of evidence following entry of default before entry of default judgment). Moreover, the court exercises its discretion to investigate further whether, as defendants allege on information and belief, plaintiff used Hope Comercio's money to fund separate business interests, and the court does not at this juncture treat this fact as established by plaintiff's default. See Fed. R. Civ. P. 55(b)(2)(C)–(D).

Finally, the court observes that proof of damages in this case inextricably is linked to proof

of the terms of any partnership agreement and other facts pertinent to alleged torts neither specified fully in defendants' counterclaims nor otherwise developed on the record. (See e.g., DE 94 at 14 ¶ 16b ("[Walid] understood that [plaintiff] . . . agreed to invest [an unspecified] similar amount in the future."); ¶ 16f (the parties agreed to reinvest an unspecified amount in the partnership before sharing profits); 16 ¶ 25 (no allegation of what merchandise, if any, CIT provided or value of same). Accordingly, now with benefit of a period of discovery, the court will afford the parties opportunity at hearing to develop more fully the record pertinent to damages and any other issues necessary to support determination of damages.

## CONCLUSION

Defendants' motions to dismiss and for entry of default, (DE 223), are GRANTED, and plaintiff's motion to set aside default, (DE 228), is DENIED. In accordance with this order, hearing is noticed at New Bern for that session beginning September 13, 2018, at 1:30 p.m.

SO ORDERED, this the 15th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge