IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-114-FL

| | |
|---|---|
| INSAF NEHME, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| WALID EL KHOURY, EDWARD EL ) | |
| KHOURY, and HOPE COMERCIO E ) | |
| INDUSTRIA LIMITADA, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion (DE 266) to withdraw reference to the bankruptcy court of adversary proceeding captioned <u>Walid El Khoury, Edward El Khoury, and Hope Comercio E. Industria Limitada v. Insaf George Nehme</u>, No. 5:19-AP-00033-SWH (Bankr. E.D.N.C.) (the "adversary proceeding"). Upon defendants' request, the motion, originally filed in the bankruptcy court, was transmitted to this court and filed in the instant related matter, which presently is stayed pending Chapter 7 bankruptcy proceedings in the case <u>In re: Insaf George Nehme</u>, No. 18-05725-5-SWH (Bankr. E.D.N.C.) ("the Chapter 7 case"). Plaintiff responded in opposition to the motion. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**BACKGROUND**

This case arises out of an intra-family dispute over the management of a joint venture, defendant Hope Comercio E Industria Limitada ("Hope Comercio"). Plaintiff, Insaf Nehme ("Nehme") and former plaintiff NOA, LLC ("NOA"), a North Carolina limited liability company

of which plaintiff Nehme is the sole member, initiated this case by complaint filed February 28, 2014. Plaintiffs sued defendants Walid El Khoury ("Walid"), who is plaintiff Nehme's cousin and a resident of Angola and Lebanon; Edward El Khoury ("Edward"), who is plaintiff Nehme's nephew, defendant Walid's son, and a resident of both Angola and Lebanon; and Hope Comercio, a limited liability company organized and existing under the laws of Angola, asserting various tort and breach of contract claims. In particular, plaintiffs asserted claims for breach of partnership agreement, breach of fiduciary duty, conversion, and unjust enrichment against defendant Walid. Plaintiffs asserted a conversion claim against defendant Edward. Finally, plaintiffs asserted a breach of contract claim against defendant Hope Comercio, in addition to an action for an accounting of defendant Hope Comercio's assets.

The court dismissed all of plaintiff's claims for failure to prosecute on August 15, 2018, due to plaintiff's failure to file notice of self-representation and other delays including failure by plaintiff's counsel to file timely notice of appearance. Claims by and against former plaintiff NOA were voluntarily dismissed November 7, 2017.[1] This left counterclaims remaining asserted by defendants against plaintiff, adjudication of which is detailed below.

Defendants Walid and Hope Comercio filed counterclaims on June 29, 2015, wherein they asserted four causes of action: breach of partnership agreement; constructive fraud; unfair and deceptive trade practices; and unjust enrichment. This court previously summarized the alleged facts underlying the counterclaims as follows:

---

[1] Former plaintiff NOA is debtor in ongoing Chapter 11 bankruptcy case, In re NOA, LLC, No. 17-02097-5-JNC (Bankr. E.D.N.C.).

[P]laintiff and defendant Walid agreed in spring 2008 to form a partnership to sell used clothing in Angola though Hope Comercio. (DE 94 at 13 ¶ 15). Defendant Walid agreed to invest $500,000 immediately upon formation of the partnership, and plaintiff agreed to invest a similar amount in the future. (Id. at 14 ¶ 16). Plaintiff agreed to work with suppliers in the United States to obtain merchandise, and Walid agreed to operate the retail store in Angola. (Id.). Both parties agreed to reinvest the profits earned by the partnership, and if their intended agreement was fulfilled, they would share profits. (Id.).

After the partnership began operations in October 2008, Walid transferred to plaintiff $400,000 to purchase three vehicles and to ship several used clothing containers to Hope Comercio. (Id. ¶ 17). At some point, plaintiff contributed less than $150,000 worth of used clothing to the partnership, by shipping to Angola four containers of items he could not sell at his Liberian store, River Way Stores. Plaintiff never invested the remaining amount. (Id. ¶ 18).

In approximately August 2009, the partnership needed additional funding due to a new policy in Angola that made it necessary to clear numerous containers of clothing from the port in Luanda immediately. (Id. at 15 ¶ 19). At that time, Walid asked plaintiff to provide his investment in the partnership, but plaintiff refused, and Walid ultimately borrowed $200,000 from a friend to rescue Hope Comercio and the partnership. (Id. at ¶¶ 20–21).

During the following years, the business carried on as Walid and Hope Comercio sent money to plaintiff and NOA to use the money to purchase used clothing. (Id. ¶ 22). Eventually, a dispute arose between the parties involving a company that plaintiff and NOA used to source clothing called Carolina International Trading ("CIT"), based in South Carolina. Specifically, plaintiff pai[d] CIT in advance for clothing where his practice with other suppliers was to pay on delivery. (Id. ¶ 23). By October 2011, plaintiff had caused Hope Comercio to advance more than $340,000 to CIT, even as Hope Comercio's suppliers in Texas were complaining that plaintiff failed to pay them. (Id. ¶ 24). In or around October 2011, Walid accompanied plaintiff to visit CIT and, at that time, discovered that CIT's inventory was worth less than $50,000. (Id. at 16 ¶ 25).

Several weeks later, plaintiff informed Walid that "we started the process to take [CIT's owner] to court." (Id. ¶ 26). On or around February 29, 2012, plaintiff informed Walid that CIT had filed bankruptcy, and that this would result in a loss to Home Comercio of roughly $330,000. (Id.). Nonetheless, plaintiff continued to do business with CIT and never filed a lawsuit against CIT. (Id. ¶ 27).

Defendants allege, on information and belief, that plaintiff used Hope Comercio's prepayment to fund CIT's shipment of several containers of used clothing

3

to Liberia, for sale in plaintiff's separate River Way Stores venture. (Id. ¶ 28). During 2012, plaintiff began operating a used clothing supply and sorting company under the name Sanford Rag Company ("SRC") and began supplying Hope Comercio with used clothing from SRC, as well as from the previously existing suppliers. (Id. ¶¶ 29–30). In 2013, plaintiff began using Hope Comercio's money to prepay SRC for its used clothing while failing to pay Hope Comercio's other suppliers. (Id. at 16–17 ¶ 31). Defendants allege, on information and belief, that plaintiff used payments from Hope Comercio to purchase used clothing for River Way Stores. (Id. at 17 ¶ 31).

In or around November 2013, six containers arrived to the port in Angola without documentation. (Id. ¶ 34). Defendant Walid learned that the suppliers withdrew documentation because plaintiff failed to pay them. (Id.). Over the course of 2013, up to and including June 29, 2015, plaintiff held between $148,000 and $600,000 of Hope Comercio's money, which does not include amounts plaintiff used to fund his separate business interests. (Id. ¶¶ 32, 35).

(Order (DE 244) 11-13).

On August 15, 2018, the court granted defendants' motion for entry of default as to the counterclaims, leaving open for final resolution defendants' motion for default judgment. (DE 223). The court determined that a hearing for determination of default judgment was necessary on several issues:

1) "[A] damages hearing is necessary where the court may enter judgment only to the extent defendants carry their burden to prove damages by a preponderance of the evidence." (Order (DE 244) at 13).

2) "Moreover, the court exercises its discretion to investigate further whether, as defendants allege on information and belief, plaintiff used Hope Comercio's money to fund separate business interests, and the court does not at this juncture treat this fact as established by plaintiff's default." (Id.).

3) "Finally, the court observes that proof of damages in this case inextricably is linked to proof of the terms of any partnership agreement and other facts pertinent to alleged torts neither

4

specified fully in defendants' counterclaims nor otherwise developed on the record. Accordingly, now with benefit of a period of discovery, the court will afford the parties opportunity at hearing to develop more fully the record pertinent to damages and any other issues necessary to support determination of damages." (Id. at 13-14).

On August 27, 2018, the court entered an order further clarifying the following issues in advance of hearing:

1) "Hearing has been set on motion remaining, where there is no issue defendants are entitled to judgment, to receive evidence to resolve factual ambiguities in the counterclaims, to determine facts alleged on information and belief, and to determine defendants' damages." (Order (DE 247) at 2).

2) "Moreover, where the allegations are uncertain and where large damages are involved, as in defendants' counterclaims sounding in tort, the court properly exercises discretion to 'establish the truth of [allegations] by evidence.'" (Id.) (quoting Fed. R. Civ. P. 55(b)(2)(C)).

In advance of hearing on motion for default judgment, plaintiff filed a trial brief on September 6, 2018, as supplemented November 5, 2018. At hearing held November 13, 2018, defendants presented testimony of an accountant and plaintiff, and the parties introduced exhibits into evidence.² At the conclusion of the hearing, the court took under advisement the motion for default judgment.

On November 30, 2018, plaintiff filed a suggestion of bankruptcy, including a notice of the Chapter 7 case. On December 5, 2018, pursuant to 11 U.S.C. 362 and Federal Rule of Bankruptcy

---

² Prior to hearing, plaintiff filed a motion to dismiss for lack of subject matter jurisdiction, which the court denied by oral order at hearing.

Procedure 4001, the court entered a text order staying the instant case due to the "bankruptcy proceedings impacting all claims remaining, comprising counterclaims against plaintiff Insaf Nehme." (Text Order, Dec. 5, 2018).

Defendants filed the instant motion on June 13, 2019, and plaintiff responded in opposition on June 27, 2019, in the bankruptcy court, and the motion papers were filed in this court on June 28, 2019.

**DISCUSSION**

Section 157 of Title 28 of the United States Code provides for district court referral to a bankruptcy judge of proceedings arising under the bankruptcy code, including "all core proceeding arising" thereunder. 28 U.S.C. § 157(a) & (b)(1); see Stern v. Marshall, 564 U.S. 462, 473 (2011). As pertinent here, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

The United States Court of Appeals for the Fourth Circuit has not enumerated factors bearing on the "cause shown" determination under § 157(d). Several other courts of appeals consistently have done so, however, along with district courts within this circuit. In particular, in determining whether a party has shown "cause," courts consider factors including:

(1) whether the proceeding is core or non-core,

(2) uniformity in the administration of bankruptcy proceedings,

(3) expediting the bankruptcy process and promoting judicial economy,

(4) efficient use of the resources of the debtor and creditors,

(5) reduction of forum shopping, and

6

(6) the preservation of the right to a trial by a jury.

See In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993); In re Pruitt, 910 F.2d 1160, 1168 (3d Cir.1990); Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir.1985); Security Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999 (9th Cir.1997); see, e.g, ACC Retail Prop. Dev. & Acquisition Fund, LLC v. Bank of Am., N.A., No. 5:12-CV-361-BO, 2012 WL 8667572, at *2 (E.D.N.C. Sept. 28, 2012); In re Dozier Fin., Inc., No. CV 4:18-1888-MGL, 2019 WL 1075072, at *4 (D.S.C. Mar. 7, 2019) (recognizing continued consistency in factors used by courts); see also In re Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993) ("This type of pragmatic decision is best left to the district court").

In this case, the first factor strongly weighs against withdraw of reference because the adversary proceeding is a core proceeding in the bankruptcy court. See, e.g., In re Orion, 4 F.3d at 1101. The adversary proceeding is a complaint by defendants "objecting to discharge and requesting determination of dischargeability of debt," premised upon exceptions to discharge set forth in 11 U.S.C. § 523(a)(2), (4), and (6), for fraudulent and willful misfeasance by plaintiff. (Adversary Proceeding Complaint, No. 18-05725-5-SWH, Doc. 1 at 1 (Bankr. E.D.N.C., April 3, 2019)). These matters expressly are enumerated "core proceedings" under 28 U.S.C. § 157(b)(2)(I) ("determinations as to the dischargeability of particular debts") and (J) ("objections to discharges").

The fact that the adversary proceeding is a core proceeding directly bears on several other factors weighing against withdraw of reference. Adjudicating the adversary proceeding in bankruptcy court promotes uniformity in the administration of bankruptcy proceedings and efficient use of judicial and party resources, where dischargeability issues fall squarely within the special province of the bankruptcy court and bankruptcy law. See, e.g., In re Gibson, 250 B.R. 226, 238

(Bankr. E.D. Va. 2000) (recognizing "the expertise of the bankruptcy courts in resolving dischargeability issues"); In re Bozzano, 183 B.R. 735, 739 (Bankr. M.D.N.C. 1995) ("Dischargeability is uniquely a bankruptcy question and questions regarding the dischargeability of debts are questions of federal bankruptcy law."); see also Brown v. Felsen, 442 U.S. 127, 136 (1979) (noting that one purpose of predecessor bankruptcy code was to "take these [dischargeability] claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them"). Likewise, the nature of the dischargeability issues, as well as the pleadings in the adversary proceeding, also confirm that the right to trial by jury is not at issue.

In addition, keeping the dischargeability determination in bankruptcy court promotes expediting the bankruptcy process and efficient use of judicial resources. "[T]he purpose of establishing a nationwide bankruptcy system is to alleviate the district courts of excessive workloads and to provide a system where judges with experience and expertise in bankruptcy matters can handle bankruptcy claims." In re Jaritz Indus., Ltd., 151 F.3d 93, 107 (3d Cir. 1998). Allowing the bankruptcy court to proceed with adjudication of the adversary proceeding promotes this purpose.

With respect to the efficiency and judicial resources factors, the court recognizes defendants' argument that the district court has already spent significant time presiding over proceedings on plaintiff's claims and defendants' counterclaims. Nevertheless, the litigation in the district court, despite its protracted length, did not involve a substantive adjudication on the merits of plaintiff's claims, and it has not resulted yet in any substantive adjudication on the merits of defendants' counterclaims. Moreover, there are multiple significant differences, set forth as follows, between the issues raised by the motion for default judgment and the issues now raised by the adversary

8

proceeding.

First, the counterclaims, as pleaded, and upon which default was entered, included claims for breach of partnership agreement and unjust enrichment, which do not overlap with the fraud claims raised in the adversary proceeding. (Compare Counterclaims (DE 94) at 18-20, with Adversary Proceeding Complaint, No. 18-05725-5-SWH, Doc. 1 at 9-12 (Bankr. E.D.N.C., April 3, 2019)). Second, even though defendants abandoned their breach of partnership counterclaim at hearing and urged a theory of constructive fraud (see, e.g., Tr. (DE 264) at 140-142), the court could proceed to adjudicate default judgment damages on the basis of unjust enrichment alone, without making findings of fraud or misrepresentation.

Third, the instant case has advanced through an unusual procedural posture. The issues presented by the motion for default judgment were not presented for a trial on the merits, but rather for a hearing on default judgment, in part under unique and complicated exceptions to the default rule, where some facts were treated as "established by plaintiff's default," and others were not. (Order (DE 244) at 13) (citing Fed. R. Civ. P. 55(b)(2)(C)-(D)). The court noted the indeterminate status of the alleged facts supporting the counterclaims, noting "where the allegations are uncertain and where large damages are involved, as in defendants' counterclaims sounding in tort, the court properly exercises discretion to 'establish the truth of [allegations] by evidence.'" (Order (DE 247) at 2) (quoting Fed. R. Civ. P. 55(b)(2)(C)).

By contrast, in the adversary proceeding, defendants seek a judgment on the claims and facts alleged in the adversary proceeding complaint. Plaintiff, as debtor and defendant in the adversary proceeding, has answered and challenged all of the claims raised in the adversary proceeding. Thus, it is unclear what, if any issues, addressed in the instant action will promote efficiencies in the

9

adversary proceeding. Indeed, reliance in the adversary proceeding on evidence presented for more limited purposes in the instant matter may invite procedural or substantive error in the adversary proceeding. The court need not resolve these issues definitively at this juncture, but rather notes that these are significant issues that weigh against withdrawal of the reference under the unique circumstances of this case.

Defendants suggest that the bankruptcy court may not have authority under the United States Constitution to issue a final judgment on the merits in the adversary proceeding. Notably, however, defendants do not take a position one way or another on this issue. The case defendants rely upon in raising the issue, Stern, also does not address the issue in the context of a dischargeability adversary proceeding. See 564 U.S. at 474 (examining adversary proceeding only involving "counterclaims by [a debtor's] estate against persons filing claims against the estate," under § 157(b)(2)(C)). Moreover, cases since Stern have held there is no impediment to the bankruptcy court issuing a final judgment in a discharge proceeding. See, e.g., In re Hart, 564 F. App'x 773, 776 (6th Cir. 2014) ("Stern does not strip the bankruptcy court of its constitutional authority to enter a final monetary judgment in this dischargeability action under § 523(a)(2)(B)."); In re Ritz, 567 B.R. 715, 736–37 (Bankr. S.D. Tex. 2017) (stating that "the limitation imposed by Stern does not prohibit this Court from entering a final judgment" in a dischargeability adversary proceeding).

Defendants also suggest that "to reach a final judgment in the Adversary Proceeding, the bankruptcy court would have to lift the automatic stay for the District Court to enter a final judgment on damages." (Defs' Mem. (DE 267) at 5). Defendants, however, cite no authority for this proposition, and the procedural and substantive utility of such an approach is not apparent. Indeed, based upon the foregoing analysis, the adversary proceeding may proceed to final judgment

independent of the instant action. Furthermore, any determination of damages in the instant action may not be useful to a final judgment in the adversary proceeding, if the damages determination in the instant action is based solely on unjust enrichment or other theory not resting on findings of fraud or misrepresentation.

The court also recognizes defendants' suggestion that plaintiff seeks to prolong proceedings in the adversary proceeding by requesting time for additional discovery. There is unquestionably a large record and volume of discovery materials upon which the parties can rely in the adversary proceeding. This does not provide, however, a definitive answer regarding whether additional discovery is warranted or not. The issue of whether additional discovery is warranted may require careful assessment of the claims now asserted and the status of the record and discovery materials presently available, which assessment must be undertaken in any event by the bankruptcy court or this court. Accordingly, the court finds this factor neutral to the withdrawal issue.

Finally, the court also finds neutral the forum shopping factor. To a certain degree, plaintiff's commencement of bankruptcy proceedings can be viewed as forum shopping to avoid further litigation in the district court, where plaintiff has already suffered adverse rulings. By the same token, however, defendants' instant motion to withdraw the reference can be viewed as forum shopping to remove the adversary proceeding from its natural setting back to the district court, where defendants have already obtained favorable rulings.

In sum, the relevant factors do weigh in favor of withdrawal of the reference under the circumstances presented. Where defendants have not met their burden to show cause for the withdrawal, the instant motion must be denied.

## CONCLUSION

Based on the foregoing, defendants' motion to withdraw reference (DE 266) is DENIED. The clerk is DIRECTED to transmit a copy of the instant order for filing in adversary proceeding <u>Walid El Khoury, Edward El Khoury, and Hope Comercio E. Industria Limitada v. Insaf George Nehme</u>, No. 5:19-AP-00033-SWH (Bankr. E.D.N.C. ).

SO ORDERED, this the 26th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge