IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-114-FL

| | | |
|---|---|---|
| INSAF NEHME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| WALID EL KHOURY, EDWARD EL | ) | |
| KHOURY, and HOPE COMERCIO E | ) | |
| INDUSTRIA LIMITADA, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for entry of final order (DE 275).
Plaintiff responded in opposition, and in this posture the issues raised are ripe for ruling. For the
following reasons, defendants' motion is granted in part and denied in part as set forth herein.

**BACKGROUND**

This case arises out of an intra family dispute over the management of a joint venture,
defendant Hope Comercio E Industria Limitada ("Hope Comercio"). Plaintiff, Insaf Nehme
("Nehme" or "plaintiff") and former plaintiff NOA, LLC ("NOA"), a North Carolina limited
liability company of which plaintiff is the sole member, initiated this case by complaint filed
February 28, 2014. Plaintiff asserts various tort and breach of contract claims against defendant
Walid El Khoury ("Walid"), who is plaintiff's cousin; defendant Edward El Khoury ("Edward"),
who is plaintiff Nehme's nephew and defendant Walid's son; and defendant Hope Comercio, a
limited liability company organized and existing under the laws of Angola.

Defendants filed counterclaims on June 29, 2015, wherein they assert four causes of action: breach of partnership agreement; constructive fraud; unfair and deceptive trade practices; and unjust enrichment.[1] This court previously has summarized the facts alleged in the counterclaims as follows:

> [P]laintiff and defendant Walid agreed in spring 2008 to form a partnership to sell used clothing in Angola though Hope Comercio. (DE 94 at 13 ¶ 15). Defendant Walid agreed to invest $500,000 immediately upon formation of the partnership, and plaintiff agreed to invest a similar amount in the future. (Id. at 14 ¶ 16). Plaintiff agreed to work with suppliers in the United States to obtain merchandise, and Walid agreed to operate the retail store in Angola. (Id.). Both parties agreed to reinvest the profits earned by the partnership, and if their intended agreement was fulfilled, they would share profits. (Id.).
>
> After the partnership began operations in October 2008, Walid transferred to plaintiff $400,000 to purchase three vehicles and to ship several used clothing containers to Hope Comercio. (Id. ¶ 17). At some point, plaintiff contributed less than $150,000 worth of used clothing to the partnership, by shipping to Angola four containers of items he could not sell at his Liberian store, River Way Stores. Plaintiff never invested the remaining amount. (Id. ¶ 18).
>
> In approximately August 2009, the partnership needed additional funding due to a new policy in Angola that made it necessary to clear numerous containers of clothing from the port in Luanda immediately. (Id. at 15 ¶ 19). At that time, Walid asked plaintiff to provide his investment in the partnership, but plaintiff refused, and Walid ultimately borrowed $200,000 from a friend to rescue Hope Comercio and the partnership. (Id. ¶¶ 20-21).
>
> During the following years, the business carried on as Walid and Hope Comercio sent money to plaintiff and NOA to use the money to purchase used clothing. (Id. ¶ 22). Eventually, a dispute arose between the parties involving a company that plaintiff and NOA used to source clothing called Carolina International Trading ("CIT"), based in South Carolina. Specifically, plaintiff pai[d] CIT in advance for clothing where his practice with other suppliers was to pay on delivery. (Id. ¶ 23). By October 2011, plaintiff had caused Hope Comercio to advance more than $340,000 to CIT, even as Hope Comercio's suppliers in Texas were complaining

---

[1] Defendants assert counterclaims on behalf of Walid and Hope Comercio. (See Defs' Ans. and Counterclaims (DE 94) at p. 11). Although they allege that Edward owns half of the shares of Hope Comercio, (id. ¶ 24), they do not assert that Edward is one of the "Counterclaim Plaintiffs" as defined in the counterclaims. (Id. at p. 11). Nevertheless, this court previously referred to defendants, collectively, as asserting counterclaims against plaintiff, without differentiating Edward from Walid and Hope Comercio. See Nehme v. Khoury, No. 5:14-CV-114-FL, 2018 WL 3876579, at *5 (E.D.N.C. Aug. 15, 2018). For ease of reference, for purposes of the instant order, the court treats defendants collectively as counterclaimants, with the caveat that defendant Edward may not, upon further analysis, have ever asserted independently any counterclaims for recovery against plaintiff.

2

that plaintiff failed to pay them. (Id. ¶ 24). In or around October 2011, Walid accompanied plaintiff to visit CIT and, at that time, discovered that CIT's inventory was worth less than $50,000. (Id. at 16 ¶ 25).

Several weeks later, plaintiff informed Walid that "we started the process to take [CIT's owner] to court." (Id. ¶ 26). On or around February 29, 2012, plaintiff informed Walid that CIT had filed bankruptcy, and that this would result in a loss to Home Comercio of roughly $330,000. (Id.). Nonetheless, plaintiff continued to do business with CIT and never filed a lawsuit against CIT. (Id. ¶ 27).

Defendants allege, on information and belief, that plaintiff used Hope Comercio's prepayment to fund CIT's shipment of several containers of used clothing to Liberia, for sale in plaintiff's separate River Way Stores venture. (Id. ¶ 28). During 2012, plaintiff began operating a used clothing supply and sorting company under the name Sanford Rag Company ("SRC") and began supplying Hope Comercio with used clothing from SRC, as well as from the previously existing suppliers. (Id. ¶¶ 29-30). In 2013, plaintiff began using Hope Comercio's money to prepay SRC for its used clothing while failing to pay Hope Comercio's other suppliers. (Id. at 16-17 ¶ 31). Defendants allege, on information and belief, that plaintiff used payments from Hope Comercio to purchase used clothing for River Way Stores. (Id. at 17 ¶ 31).

In or around November 2013, six containers arrived to the port in Angola without documentation. (Id. ¶ 34). Defendant Walid learned that the suppliers withdrew documentation because plaintiff failed to pay them. (Id.). Over the course of 2013, up to and including June 29, 2015, plaintiff held between $148,000 and $600,000 of Hope Comercio's money, which does not include amounts plaintiff used to fund his separate business interests. (Id. ¶¶ 32, 35).

Nehme v. Khoury, No. 5:14-CV-114-FL, 2018 WL 3876579, at *6-7 (E.D.N.C. Aug. 15, 2018).

A period of discovery on the claims and counterclaims followed.

On August 23, 2016, the court awarded monetary sanctions to defendants on the basis that plaintiff failed to respond to certain discovery requests propounded by defendants, and the court directed that payment of such sanctions should be made by plaintiffs' former counsel. See NOA, LLC v. El Khoury, No. 5:14-CV-114-FL, 2016 WL 4444770, at *6 (E.D.N.C. Aug. 23, 2016). On September 5, 2017, the court awarded additional monetary sanctions to defendants on the basis that plaintiff disclosed confidential documents in litigation in Lebanon, in contravention of the

3

court's orders. See NOA, LLC v. El Khoury, No. 5:14-CV-114-FL, 2017 WL 11566799, at *4 (E.D.N.C. Sept. 5, 2017).[2]

In the same order, the court granted summary judgment in favor of defendants on certain claims asserted by plaintiff and former plaintiff NOA. Id. at *12. In particular, the court dismissed plaintiff's fifth claim for breach of contract. The court also dismissed a portion of plaintiff's claims premised upon ownership of Hope Comercio, where plaintiffs and former plaintiff NOA failed to disclose ownership of the same in required tax filings. Id. at *7.[3]

In an order entered August 15, 2018, which is critical to the instant analysis, the court dismissed all of plaintiff's remaining claims for failure to prosecute due to plaintiff's failure to file notice of self-representation and other delays including failure by plaintiff's counsel to file timely notice of appearance. See Nehme v. Khoury, No. 5:14-CV-114-FL, 2018 WL 3876579, at *4 (E.D.N.C. Aug. 15, 2018). In the same order, the court addressed defendants' motion for default judgment and plaintiff's motion to set aside default, as follows.

First, the court determined that defendants "must first seek entry of default under Federal Rule of Civil Procedure 55(a)," and that here "entry of default is mandatory" where plaintiff had failed to "otherwise defend." Id. at *4. Second, the court determined that plaintiff's opposition to

---

[2] On November 17, 2017, the court entered judgment of attorneys' fees and monetary penalty in favor of defendants, charged in part to plaintiff's former counsel and in part to plaintiff. See Nehme v. El Khoury, No. 5:14-CV-114-FL, 2017 WL 5559957, at *3 (E.D.N.C. Nov. 17, 2017). The court denied plaintiff's motion to alter judgment on August 15, 2018. (See Order (DE 245)). Plaintiff's former counsel filed a notice of appeal of said judgment on September 12, 2018, but the appeal was dismissed upon stipulated motion of voluntary dismissal, on December 18, 2018.

[3] Former plaintiff NOA filed a suggestion of bankruptcy on May 5, 2017, as debtor in a Chapter 11 bankruptcy case, In re NOA, LLC, No. 17-02097-5-JNC (Bankr. E.D.N.C.) ("NOA bankruptcy case"). Remaining claims by and against former plaintiff NOA were voluntarily dismissed by stipulation of dismissal on November 7, 2017. The NOA bankruptcy case was converted to one under Chapter 7, on February 16, 2018, and the estate was liquidated, as reported in the trustees' final report, filed October 18, 2019, and final account and distribution report, filed August 6, 2020. (See id. Docs. 441 and 456). On the basis thereof, the NOA bankruptcy case was closed on August 7, 2020.

4

default was without merit, through application of factors similar to that applied to dismiss plaintiff's claims.  Id. at *4-5.

Third, with respect to default judgment, the court determined that a hearing for determination of default judgment was necessary on several issues, described as follows:

> 1)      "[A] damages hearing is necessary where the court may enter judgment only to the extent defendants carry their burden to prove damages by a preponderance of the evidence. See Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249, 252 (4th Cir. 1967) (plaintiff required to prove damages by preponderance of evidence following entry of default before entry of default judgment)." Id. at *7.

> 2)      "Moreover, the court exercises its discretion to investigate further whether, as defendants allege on information and belief, plaintiff used Hope Comercio's money to fund separate business interests, and the court does not at this juncture treat this fact as established by plaintiff's default. See Fed. R. Civ. P. 55(b)(2)(C)–(D). " Id.

> 3)      "Finally, the court observes that proof of damages in this case inextricably is linked to proof of the terms of any partnership agreement and other facts pertinent to alleged torts neither specified fully in defendants' counterclaims nor otherwise developed on the record. . . . Accordingly, now with benefit of a period of discovery, the court will afford the parties opportunity at hearing to develop more fully the record pertinent to damages and any other issues necessary to support determination of damages." Id.

On August 27, 2018, the court entered an order further clarifying the following issues in advance of hearing:

> 1)      "Hearing has been set on motion remaining, where there is no issue defendants are entitled to judgment, to receive evidence to resolve factual ambiguities in the counterclaims, to determine facts alleged on information and belief, and to determine defendants' damages." (Order (DE 247) at 2).

> 2)      "Moreover, where the allegations are uncertain and where large damages are involved, as in defendants' counterclaims sounding in tort, the court properly exercises discretion to 'establish the truth of [allegations] by evidence.'" (Id.) (quoting Fed. R. Civ. P. 55(b)(2)(C)).

At hearing held November 13, 2018, defendants presented testimony of an accountant and plaintiff, and the parties introduced exhibits into evidence.   At the conclusion of the hearing, the court took under advisement the motion for default judgment.

5

On November 30, 2018, plaintiff filed a suggestion of bankruptcy, including a notice of Chapter 7 bankruptcy proceedings in the case In re: Insaf George Nehme, No. 18-05725-5-SWH (Bankr. E.D.N.C.) (the "Chapter 7 case"). On December 5, 2018, pursuant to 11 U.S.C. § 362 and Federal Rule of Bankruptcy Procedure 4001, the court entered a text order staying the instant case due to the "bankruptcy proceedings impacting all claims remaining, comprising counterclaims against plaintiff Insaf Nehme." (Text Order, Dec. 5, 2018).

Defendants commenced an adversary proceeding in the Chapter 7 case, captioned Walid El Khoury, Edward El Khoury, and Hope Comercio E. Industria Limitada v. Insaf George Nehme, No. 5:19-AP-00033-SWH (Bankr. E.D.N.C.) (the "adversary proceeding"), on April 3, 2019, asserting an objection to discharge and requesting a determination of dischargeability of debt, premised upon exceptions to discharge set forth in 11 U.S.C. § 523(a)(2), (4), and (6).[4] Defendants asserted that evidence presented at hearing held in this court on November 13, 2018, showed that plaintiff "would owe [defendant Walid] $765,185.00" in damages if found liable. (Adversary proceeding, Complaint, Doc. 1 at 8).

Defendants moved on June 13, 2019, to withdraw reference to the bankruptcy court of the adversary proceeding. The court denied defendants motion to withdraw reference on September 26, 2019. See Nehme v. El Khoury, 610 B.R. 247, 248 (E.D.N.C. 2019). Thereafter, in the Chapter 7 case, the bankruptcy court entered an order of discharge on March 20, 2019, which states: "A discharge under 11 U.S.C. § 727 is granted to: Insaf George Nehme." (Order, Chapter 7 case, No. 18-05725-5-SWH, Doc. 39 at 1 (March 20, 2019)). In the adversary proceeding, on December 11,

---

[4] As exceptions, the Bankruptcy Code enumerates 19 types of debt that do not qualify for discharge, including exceptions (2), (4), and (6), which are for: (2) money obtained by "false pretenses, a false representation, or actual fraud"; (4) "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" or (6) "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(2), (4), and (6).

2020, the parties entered a stipulation of dismissal without prejudice of all claims in the adversary proceeding, pursuant to Rule 41(a)(1)(A)(ii).

On April 29, 2021, plaintiff filed a status report stating that the Chapter 7 case "has been closed, and Debtor has been discharged." (DE 272 at 1). In addition, plaintiff stated that the adversary proceeding "which asserted an objection to discharge of the debtor, was dismissed without prejudice, and the case has been closed." (Id.). Defendants filed their instant status report on April 30, 2021, reporting the same. In addition, defendants asserted:

> Plaintiff . . . maintains his lawsuit against Defendants in Lebanon, in which he continues to rely on orders issued by this Court and documents produced in and related to this case. As the [Chapter 7 case] is no longer pending, Defendants request that the Court affirm its Order dated August 15, 2018 (DE 244) and enter judgment against [plaintiff].

(DE 273).

On May 11, 2021, the court construed defendants' status report as a motion to reopen the case and to enter judgment. The court granted the motion to reopen the case based upon the lifting of the automatic stay. The court denied the motion in remaining part, directing "defendants to file an appropriate motion . . . either for a stay of these proceedings to allow a discharge determination by the bankruptcy court, or for such other relief as may be warranted." (DE 274 at 11).

Defendants' instant motion followed in which defendants seek the following relief.

[Defendants] move the court for entry of a final order:

1) finding Plaintiff Insaf Nehme's claims have been dismissed and there is no finding of liability against defendants in this case.

2) confirming that Defendants were entitled to judgment on their counterclaims but for the commencement of Plaintiff Nehme's chapter 7 bankruptcy case (see DE-247); and

3) closing the case.

(DE 275). Defendants rely upon a declaration of defendant Walid, as well as a memorandum of law, in which defendants further characterize the relief sought as including a request for an order "declaring that the defendants have met their burden to establish liability against Nehme as further described in the order granting default judgment entered on August 15, 2018 (DE-244)." (Mem. (DE 276) at 6). Plaintiff responded in opposition to the instant motion.

## COURT'S DISCUSSION

As noted in the court's previous order reopening this case, a Chapter 7 "discharge provides the debtor with a 'fresh start' by enjoining the collection of any remaining debts, unless the Code excepts those debts from discharge." Tidewater Fin. Co. v. Williams, 498 F.3d 249, 252 (4th Cir. 2007) (citing 11 U.S.C. §§ 523-524, 727). A discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1)-(2) (emphasis added). The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5).

"Consequently, any right to payment which arises prior to the bankruptcy constitutes pre-petition debt and is discharged, absent an applicable exception." In re Rosenfeld, 23 F.3d 833, 836 (4th Cir. 1994). "The discharge operates to permanently stay any attempt to hold the debtor personally liable for discharged debts." Id. (citing 11 U.S.C. § 524(a)(2)). "As the language of § 524(a)(2) makes clear, a violation [of the discharge injunction] occurs when the debtor is exposed to personal liability." In re Fina, 550 F. App'x 150, 154 (4th Cir. 2014).

8

Concerning the propriety of entry of final judgment in this case, the court considers also that "[w]hen an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). In addition, a "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). "A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings." Fed. R. Civ. P. 54(a). Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Finally,

> In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335–36 (4th Cir. 1993).

The foregoing principles have differing impact on plaintiff's claims and defendants' counterclaims, addressed in turn as follows.

A.      Plaintiff's Claims

The Bankruptcy Code provisions concerning discharge do not preclude judgment on plaintiff's claims. See 11 U.S.C. §§ 101, 524. Judgment, instead, is governed by Rule 54. Pursuant to that rule, there is no just reason for delay of entry of final judgment on plaintiff's claims. In making this determination, the court is guided by application of some of the factors enumerated in Braswell, particularly "miscellaneous factors such as delay, economic and solvency considerations, which counsel in favor of bringing this case to a close with entry of a final judgment

9

to the full extent possible despite plaintiff's discharge. 2 F.3d at 1335. Other factors are that there are no further proceedings called for in light of the court's orders in this case and plaintiff's bankruptcy. There is also thus no possibility that a reviewing court "might be obliged to consider the same issue[s]" raised by plaintiff's claims a second time in the course of the instant case. Id.

In sum, a final judgment is warranted in favor of defendants on all of plaintiff's claims, on the basis of the court's orders dismissing plaintiff's claims. In accordance with that judgment, plaintiff shall have and recover nothing from defendants on plaintiff's claims against defendants. Therefore, the court grants defendants' motion in that part where it seeks a judgment on plaintiff's claims.

B.      Defendants' Counterclaims

By contrast, the court is unable to enter a final judgment on the merits of defendants' counterclaims in the manner requested. None of the court's prior orders addressing the counterclaims constituted a final order adjudicating the counterclaims. The court's August 15, 2018, order only provided for "entry of default" on defendants' counterclaims. 2018 WL 3876579 at * 4. It did not provide for entry of default judgment, but rather left several issues remaining for determination, comprising proof of damages, findings on allegations made on information and belief, and "proof of the terms of any partnership agreement and other facts pertinent to alleged torts neither specified fully in defendants' counterclaims nor otherwise developed on the record." Id. at * 7. The court cited the case, Consolidated Masonry & Fireproofing, Inc., 383 F.2d at 252, for the proposition that a "plaintiff [is] required to prove damages by preponderance of evidence following entry of default before entry of default judgment." Id. (emphasis added). In sum, the court's August 15, 2018, order did not constitute a final order.

10

Likewise, the court's August 27, 2018, order did not constitute a final order, but it further addressed issues left for determination in advance of hearing:

> 1) "Hearing has been set on motion remaining, where there is no issue defendants are entitled to judgment, to receive evidence to resolve factual ambiguities in the counterclaims, to determine facts alleged on information and belief, and to determine defendants' damages." (Order (DE 247) at 2).

> 2) "Moreover, where the allegations are uncertain and where large damages are involved, as in defendants' counterclaims sounding in tort, the court properly exercises discretion to 'establish the truth of [allegations] by evidence.'" (Id.) (quoting Fed. R. Civ. P. 55(b)(2)(C)).

Finally, the court made no determination or pronouncement of default judgment at hearing on November 13, 2018, but rather took under advisement defendants' motion for default judgment.

In sum, there was no final order on defendants' counterclaims prior to plaintiff's filing of bankruptcy and the subsequent discharge by the bankruptcy court. The bankruptcy court's unqualified discharge now "operates to permanently stay any attempt to hold the debtor personally liable for discharged debts." In re Rosenfeld, 23 F.3d 833, 836 (4th Cir. 1994) (emphasis added) (citing 11 U.S.C. § 524(a)(2)). "[A] violation [of the discharge injunction] occurs when the debtor is exposed to personal liability." In re Fina, 550 F. App'x at 154 (emphasis added). Therefore, the court is prevented by the discharge from entering judgment holding plaintiff personally liable for discharged debts, here defendants' counterclaims for liability. The only judgment on the counterclaims permissible in order to close out this case is a judgment dismissing the counterclaims on the basis of the discharge.

Defendants argue that a judgment with "a declaration as to liability only" would not be barred by the discharge injunction. (Defs' Mem. (DE 276) at 4). This argument is unavailing for several reasons. First, the court did not make a final determination of plaintiff's liability prior to plaintiff's bankruptcy filing and discharge. While defendants point to the statement in the court's

11

August 27, 2018, order that "there is no issue defendants are entitled to judgment," (Order (DE 247) at 2), this was not a final determination of plaintiff's liability, particularly when read in context of the enumeration of the issues remaining to be decided in the court's August 15 and August 27, 2018, orders. Issues remaining to be decided included not only questions of damages but also questions as to the factual grounds for the counterclaims.

Second, the court lacks authority to award the form of judgment sought by defendants. Defendants seek an "order declaring that the defendants have met their burden to establish liability against [plaintiff] as further described in the order granting default judgment entered August 15, 2018" (Defs' Mem. (DE 276) at 6), or an order "confirming that Defendants were entitled to judgment on their counterclaims but for the commencement of [plaintiff's] chapter 7 bankruptcy case." (Defs' Mot. (DE 275) at 1). However, "[a] judgment should not include . . . a record of prior proceedings." Fed. R. Civ. P. 54(b). A judgment restating descriptions in the court's August 15, 2018, order would do no more than recite the record of prior proceedings, none of which comprised final adjudications. At the same time, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Id. 54(c). Here, a default judgment providing a declaration of "liability against [plaintiff]," (Defs' Mem. (DE 276) at 6), is different in form from the relief sought in defendants' counterclaims. (See, e.g., DE 94 at 20-21) (seeking "judgment against [plaintiff] . . . on all claims," "monetary damages," and an "accounting"). Likewise, defendants also cite no authority for entry of a judgment proclaiming liability, in the abstract, divorced from any particular claim for relief.

Third, authority cited by defendants is inapposite. In Hawxhurst v. Pettibone Corp., 40 F.3d 175 (7th Cir. 1994), the corporate debtor's "reorganization plan included a series of 'step-up agreements' with the excess insurers, under which the insurers agreed to defend [the debtor] and

12

pay the personal injury claims up to their policy limits after Pettibone had fully met" a "self-insured retention." Id. at 178. In that context, the bankruptcy court allowed a modification of discharge to permit the plaintiff to "proceed nominally against [the debtor] in order to collect insurance proceeds," with multiple limitations, including that the plaintiff "could recover against [the debtor's] insurers only pursuant to [the] confirmed plan and subject to the payment conditions and procedures [already] imposed on timely claimants." Id. (emphasis added). Here, by contrast, there is no confirmed reorganization plan contemplating payments from insurance proceeds, and defendants do not seek to proceed against plaintiff for purposes of payment from a third party insurer.

Similarly inapposite is In re Taylor, 793 F.3d 814 (7th Cir. 2015), in which claimants sought a "ratification order" declaring an assignment valid, which "had no impact on the legal status of the parties, and in particular, it had no impact on [the debtor's] legal obligations in relation to the judgment." Id. at 820. "With or without the ratification order, [the debtor's] liability remained the same." Id. Here, by contrast, defendants seek an order expressly declaring the debtor's liability, which liability had not been established by a final order of this court.

Defendants also suggest that the requested judgment on their counterclaims is warranted because of plaintiff's alleged misrepresentations and other actions in litigation in Lebanon. For example, defendant Walid states in his declaration that plaintiff "misrepresented to the Lebanese Court that this Court's Order denying the motion to dismiss for lack of personal jurisdiction established liability against us and established the existence of a partnership between the El Khourys and [plaintiff]." (Decl. (DE 277) ¶ 6). Defendants suggest that the final order they now request is just and within the inherent powers of this court, pursuant to Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). While the court's inherent powers provide a basis for sanctions, for

example, in the event "a fraud has been perpetrated upon the court," id. at 44, defendants do not allege any fraudulent post-discharge conduct by plaintiff towards this court, but rather towards a court in Lebanon. Thus, where this court's orders speak for themselves, any recourse on this basis is to the court in Lebanon.

In considering the propriety of the requested judgment in this case, the court is mindful that "defendants have participated fully in discovery, prevailed on summary judgment and pursued their counterclaims diligently through a full evidentiary hearing – all at great expense." (Defs' Mem. at 6). These efforts were not all in vain, where judgment now will be entered against plaintiff and in favor of defendants on all of plaintiff's claims against them. However, the court is precluded from entering the requested judgment on defendants' counterclaims, and the court is compelled instead to enter judgment denying defendants' motion for default judgment and dismissing defendants' counterclaims due to plaintiff's discharge in bankruptcy.

## CONCLUSION

Based on the foregoing, defendants' motion for entry of final order (DE 275) is GRANTED IN PART and DENIED IN PART as set forth herein. The clerk is DIRECTED to enter judgment in this matter stating as follows, and then close this case:

**DECISION BY THE COURT.**

**IT IS ORDERED, ADJUDGED AND DECREED,** that for the reasons stated in the court's order entered September 5, 2017, that defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's fifth claim for relief for breach of contract is dismissed.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that for the reasons stated in the court's order entered August 15, 2018, all remaining claims asserted by plaintiff are dismissed for failure to prosecute, and plaintiff shall have and recover nothing from defendants on plaintiff's claims against defendants.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED,** that for the reasons stated in the court's order entered September 23, 2021, defendants' motion

14

for default judgment is denied and defendants' counterclaims against plaintiff are dismissed due to plaintiff's discharge in bankruptcy.

SO ORDERED, this the 23rd day of September, 2021.

LOUISE W. FLANAGAN
United States District Judge